UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANCIS MARTE,

                          Plaintiff,

v.                                                          3:25-CV-0869
                                                            (GTS/DJS)
BAYWOOD HOTELS-CANOPY BY HILTON,
ITHACA; KATHY TAYLOR, in her individual
and official capacity; and TERI TARSHUS, in
her individual and official capacity,

                          Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

FRANCIS MARTE
  Plaintiff, *Pro Se*
320 West Buffalo Street, Apt. 113
Ithaca, NY 14850

BOND, SCHOENECK & KING, PLLC               HOWARD M. MILLER, ESQ.
  Counsel for Defendants                   SAMANTHA A. KNICE, ESQ.
68 South Service Road, Suite 400
Melville, NY 11747

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment civil rights action filed by Francis Marte

("Plaintiff") against Baywood Hotels-Canopy By Hilton, Ithaca ("Baywood"), Kathy Taylor, and

Teri Tarshus (collectively "Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint

for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 12, 13.)  For the

reasons set forth below, Defendants' motion is granted in part and denied in part.

I.      RELEVANT BACKGROUND

## A.     Plaintiff's Complaint

Generally, in her Complaint, Plaintiff asserts seven claims: (1) claims of wage theft pursuant to the Fair Labor Standards Act ("FLSA") and, as the Court has liberally construed her Complaint, the New York Labor Law; (2) claims for retaliation pursuant to both Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYSHRL") found at N.Y. Exec. L. § 296; (3) claims for discrimination based on her sex, national origin, and injury status pursuant to both Title VII and the NYSHRL; (3) claims for hostile work environment based on her sex, national origin, and injury status pursuant to both Title VII and the NYSHRL; (4) a claim for a violation of her constitutional rights pursuant to 42 U.S.C. § 1983; (5) claims for whistleblower retaliation pursuant to N.Y. Lab. L. § 740; (6) claims for breach of confidentiality/privacy pursuant to New York law; and (7) claims for wrongful termination pursuant to New York law.  (*See generally* Dkt. No. 1.)

## B.     Parties' Briefing on Defendants' Motion to Dismiss

### 1.     Defendants' Memorandum of Law

Generally, in their motion, Defendants make eight arguments.  (Dkt. No. 16, Attach. 1.) First, Defendants argue that Plaintiff has failed to state any claim of discrimination because (a) she has not alleged any facts to render plausible her conclusory assertion that any discrimination she experienced was because of her sex or ethnicity specifically, including no facts to plausibly suggest that similarly situated coworkers of another sex or ethnicity were treated more favorably, and (b) there is no cognizable cause of action for discrimination based on injury status at all under Title VII and, as to the NYSHRL, the injury alleged here was only temporary and

2

therefore could not qualify as a disability that would be entitled to protection under that statute. (*Id.* at 13-18.)

Second, Defendants argue that Plaintiff's NYSHRL claims fail because she has not alleged that Defendants, as her employer, condoned or approved any of the alleged discriminatory conduct engaged in by her coworkers or managers, and that such deficiency is fatal because there is no vicarious liability based on a theory of respondeat superior permitted in employment discrimination cases pursuant to the NYSHRL. (*Id.* at 18-20.)

Third, Defendants argue that Plaintiff's hostile work environment claims must be dismissed because (a) she has not provided sufficient allegations regarding the specific nature of the alleged conduct, its frequency, or its duration, (b) she has not alleged, other than through conclusory statements, that this conduct was because of her sex or ethnicity, and (c) as to her NYSHRL claim, she has not alleged that she was treated less well than other employees through the receipt of inferior terms, conditions, or privileges of employment. (*Id.* at 20-22.)

Fourth, Defendants argue that Plaintiff's retaliation claims fail as a matter of law because (a) causation is refuted by the fact that Defendants permitted Plaintiff to retract her notice of resignation after she had already engaged in the alleged protected activity, (b) the four-month gap between her protected activity of claiming worker's compensation and her "demotion" is too long to create a reasonable inference of retaliation, and (c) merely alleging that her employment was terminated after she filed a grievance is, without more, insufficient to establish but-for causation. (*Id.* at 23-25.)

Fifth, Defendants argue that Plaintiff has failed to state a claim for a violation of N.Y. Labor Law § 740 because she has not alleged that any decisionmaker was actually aware of her

3

alleged complaints or that the subject of her complaints was a violation that creates and presents a substantial and specific danger to public health or safety as required by that statute.  (*Id.* at 25-27.)

Sixth, Defendants argue that Plaintiff's claim pursuant to Section 1983 must be dismissed because Defendants are not state actors and Plaintiff has not alleged (and cannot allege) that they acted under the color of state law.  (*Id.* at 27-28.)

Seventh, Defendants argue that Plaintiff's wage theft claims must be dismissed because her allegations are insufficiently detailed to meet the pleading requirements for an FLSA violation, and Plaintiff has not alleged any violation of New York's Wage Theft Protection Act based on any failure to provide required wage notices.  (*Id.* at 28-31.)

Eighth, Plaintiff's claims pursuant to Title VII and N.Y. Labor Law § 740 must be dismissed against the individual Defendants because those statutes do not provide for liability against individuals. (*Id.* at 31.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff makes six arguments.  (Dkt. No. 20.)  First, Plaintiff argues that her claims are supported by evidence including Defendants' own internal records, payroll statements, grievance results, and documented communications, and that Defendants cannot merely assert that they cannot be held liable for the actions of their own managers.  (*Id.* at 3.)

Second, Plaintiff argues that evidence documents pay discrepancies, misclassification of her job title, and a voided $6,000 paycheck, all of which substantiate a pattern of intentional wage violations.  (*Id.* at 5.)

4

Third, Plaintiff argues that she has sufficiently alleged a causal connection between her filing of a grievance on October 29, 2024, and her termination shortly after. (*Id.* at 6.)

Fourth, Plaintiff argues that she has stated a claim for hostile work environment and gender discrimination because she has alleged that she experienced exclusion, intimidation, and unequal treatment, and, while her complaints to management were ignored, male managers were protected. (*Id.* at 7.)

Fifth, Plaintiff argues that her complaints on April 27, 2024, constitute protected activity for the purposes of her whistleblower claim. (*Id.* at 8.)

Sixth, Plaintiff argues that, during the EEOC proceedings, Defendants made inconsistent statements that constitute evidence of bad faith and an attempt to conceal discriminatory and retaliatory conduct. (*Id.* at 9.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in reply, Defendants make six arguments. (Dkt. No. 21.) First, Defendants argue that Plaintiff's Complaint fails to state a cause of action for discrimination because (a) it rests wholly on unsupported conclusions that the conduct against her was motivated by a protected characteristic, and (b) as argued in their initial memorandum of law, injury status (much less as to an injury of a temporary nature) is not a protected characteristic and Plaintiff has not challenged that argument. (*Id.* at 3-5.)

Second, Defendants argue that the NYSHRL does not impose vicarious liability upon employers, and Plaintiff has not alleged any facts plausibly suggesting that Defendants condoned, encouraged, or approved of any of the allegedly discriminatory conduct. (*Id.* at 5-6.)

5

Third, Defendants argue that Plaintiff's Complaint fails to state a cause of action for hostile work environment because (a) she has failed to allege the duration, frequency, and severity of the alleged conduct, (b) the conduct she has alleged is insufficient to rise to the level of a hostile work environment, and (c) she has failed to plausibly allege how any such conduct was related to her sex or ethnicity. (*Id.* at 6-7.)

Fourth, Defendants argue that Plaintiff's Complaint fails to state a cause of action for retaliation because (a) simply pleading that an adverse action occurred after a protected activity is insufficient to survive a motion to dismiss, (b) as to her whistleblower claim, she has failed to allege that Defendants were aware of the adverse action or that her complaints related to any specific danger to the public health and safety, and (c) Plaintiff has not opposed the argument asserting that the Section 1983 claim must be dismissed on the basis that Defendants are not state actors. (*Id.* at 7-8.)

Fifth, Defendants argue that Plaintiff's Complaint fails to state any wage theft claim because (a) she appears to rely upon "exhibits" that were never attached to the Complaint or her opposition memorandum of law, and (b) her allegations do not plausibly allege any overtime work for which she was not paid related to an FLSA claim or that she never received wage statements as required by New York law. (*Id.* at 8.)

Sixth, Defendants argue that Plaintiff's claims against the individual Defendants pursuant to Title VII and N.Y. Labor Law § 740 must be dismissed because Plaintiff has failed to oppose their argument that those statutes do not provide for liability against individuals. (*Id.* at 9.)

## II.    GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

7

on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

8

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a

9

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

## III.    ANALYSIS

### A.    Whether Plaintiff Has Stated a Claim Pursuant to Section 1983

---

[1]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

"In order to state a claim under § 1983, a plaintiff must allege that he [or she] was injured by either a state actor or a private party acting under the color of state law." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 [2d Cir. 1992]). "A private actor may be liable under § 1983 only if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 [2001]).

Here, Plaintiff has not alleged that any of the Defendants were acting under the color of state law when engaging in the relevant conduct against her, and there is nothing to suggest any nexus between Defendants (who appear to consist of a private business and two of that business's employees) and a government entity related to any of the relevant conduct. Because Plaintiff's Complaint does not meet this core condition for stating a claim pursuant to Section 1983, such claim must be dismissed against all Defendants.

**B.     Whether Plaintiff Has Stated Claims for Discrimination and Hostile Work Environment Based on Her Sex, National Origin, and/or Injury Status**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra*, Parts I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

11

Where a plaintiff has asserted a discrimination (or hostile work environment) claim based on a theory of disparate treatment (i.e., "where an employer has 'treated a particular person less favorably than others because of' a protected trait"), he or she "must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 [1988]). Specifically, on a motion to dismiss, a plaintiff must, as relevant here, allege facts to plausibly suggest that the circumstances surrounding an alleged adverse action "give rise to an inference of discrimination." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 [2d Cir. 2000]).

As an initial matter, Defendants are correct that Plaintiff's assertions that she was discriminated against because of her "injury status" do not implicate a protected characteristic under Title VII, which, by its explicit terms, prohibits discrimination based only on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The NYSHRL does include "disability" within its definition of protected characteristics, and that term is defined by the statute as

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y. Exec. L. § 292(21).

Other than having the above-quoted slightly more lenient definition of what constitutes a disability, NYSHRL claims based on disability are generally subject to the same analysis as claims pursuant to the Americans with Disabilities Act ("ADA"), which courts within this Circuit have recognized was amended in 2008 to eliminate the duration requirement that an impairment had to be "permanent or long term" to constitutes a disability, altering it to include any qualifying impairment "lasting or expected to last less than six months." *Samuels v. Urban Assembly Charter Sch. for Computer Sci.*, 23-CV-1379, 2024 WL 4008165, at *4-5 (S.D.N.Y. Aug. 30, 2024) (quoting *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 [2d Cir. 2021]); *see also Crawford v. Bronx Cmty. College*, 22-CV-1062, 2024 WL 3898361, at *13 (S.D.N.Y. Aug. 21, 2024) (finding no error in Magistrate Judge's conclusion that the plaintiff's temporary broken ankle injury could qualify as a disability despite its short-term nature, including under the NYSHRL); *Staley v. Smart*, 23-CV-3546, 2024 WL 3835518, at *10 (S.D.N.Y. July 30, 2024) (noting that nothing in the definition of disability in the NYSHRL precludes it from including impairments that are short-term and temporary). Indeed, the Second Circuit has affirmatively stated that, pursuant to the ADA amendments, "a short-term injury *can* qualify as an actionable disability under the ADA" as long as it meets the other requirements outlined in the relevant definition of disability. *Hamilton*, 3 F.4th at 93-94.

Nevertheless, even if the seemingly temporary nature of Plaintiff's injury is not an outright bar for her discrimination and/or hostile work environment claims pursuant to the NYSHRL, such claims ultimately fail here because Plaintiff's Complaint contains no allegations about the nature of her injury or its limiting effects from which it can be determined whether such injury meets the definition of a disability pursuant to the NYSHRL, nor does it allege that

13

any of the relevant discriminatory and/or harassing conduct occurred while she was still suffering from the relevant injury.  (*See* Dkt. No. 1, at 12 [alleging that the harassing conduct began occurring *after* her recovery and *after* she returned to work from her medical leave].)  In the absence of such factual allegations about her alleged disability, her claim based on her "injury" must be dismissed.

Plaintiff's discrimination and hostile work environment claims based on her sex and national origin pursuant to both Title VII and the NYSHRL also fail because Plaintiff has not alleged facts plausibly suggesting that the allegedly discriminatory or harassing conduct was taken against her for reasons related to her gender or ethnicity/national origin.  As to her ethnicity/national origin, the only relevant allegation that can be found in the Complaint is that Plaintiff is Hispanic.  (Dkt. No. 1, at 8.)  However, there are no allegations to suggest the ethnicities of the individuals who allegedly discriminated against her or that the treatment she allegedly was subjected to was in any way motivated by the fact that she is Hispanic.

As to her sex, Plaintiff alleges that she is female and that, following her reports of a workplace injury, her filing for worker's compensation benefits, and her return from medical leave related to that injury, male managers (particularly the kitchen manager and the bar manager) began acting "uncomfortably" around her, and that male managers and "some coworkers" subjected her to "increased hostility" by isolating her, reducing her shifts and subjecting her to "unfair treatment."  (Dkt. No. 1, at 12-13.)  In her opposition memorandum of law, she further states that "[c]omplaints to management were ignored while male managers

14

were protected."[2]  (Dkt. No. 20, at 7.)  However, the mere fact that the managers who engaged in

the alleged conduct against her happen to be male is insufficient to plausibly suggest that the

treatment was because of her sex.  Moreover, to the extent Plaintiff appears to suggest that

discriminatory intent is shown by the fact that male managers were protected by Defendants

(who ignored her complaints), such allegations do not plausibly suggest discrimination based on

her sex because, in order to allege discrimination based on a theory of disparate treatment, a

plaintiff must generally allege that her employer "treated [her] less favorably than a similarly

situated employee outside [her] protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39

(2d Cir. 2000).  A similarly situated employee is one who is "similarly situated in all material

respects" to the plaintiff, which includes considerations such as whether that person and the

plaintiff worked in the same position, were supervised by the same manager, and engaged in

similar conduct.  *Graham*, 230 F.3d at 39.  There are no allegations to suggest that the relevant

male managers were similarly situated to Plaintiff; the fact that they were kitchen and bar

managers while Plaintiff was a "Housekeeping Supervisor" suggests that they are not.  Plaintiff

also does not allege that any male employee made complaints similar to hers that were *not*

ignored by management.  For these reasons, Plaintiff's allegations are insufficient to state any

---

[2]    Although a plaintiff is not typically permitted to amend his or her complaint through the assertion of new facts in a responsive memorandum, the Court may consider such new allegations in a situation where the plaintiff is *pro se* and those new allegations do not conflict with or contradict the allegations in the Complaint.  *See Shih v. Broadway League*, 23-CV-8035, 2024 WL 3928618, at *3 (S.D.N.Y. Aug. 20, 2024) (finding it appropriate to consider factual assertions made in the *pro se* plaintiff's opposition memorandum of law in light of the liberal standard of construing a pro se litigant's complaint); *Braxton v. Nichols*, 08-CV-8568, 2010 WL 1010001, at *1 & n.1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.") (collecting cases).

claim that requires a showing that discrimination occurred specifically based on her sex (or, for the reasons discussed previously, her ethnicity or national origin).

Moreover, as to Plaintiff's hostile work environment claim pursuant to Title VII, Plaintiff's allegations in the Complaint fail to plausibly suggest that the conduct she was allegedly subjected to was sufficiently severe or pervasive to create an objectively hostile work environment (not merely one that she subjectively perceived to be hostile). *Alfano v. Costello*, 294 F.3d at 365, 373-74 (2d Cir. 2002). Specifically, Plaintiff alleges that the "hostile change in the workplace environment" occurred after she returned from a medical leave related to an injury,[3] and that at that time male managers "acted uncomfortably" around her, that male managers and "some coworkers" subjected her to "increased hostility," such that she was "isolated, given reduced shifts, and subjected to unfair treatment," and the details of her grievance about her harassment and wage issues were disclosed to her coworkers. (Dkt. No. 1, at 12-13.) She also alleges that she was not always paid at the hourly rate she was told when she was hired (although it is not clear how often that occurred) and that she was "demoted" to a lower pay rate of a dollar less per hour in October 2024 after she submitted a letter of resignation that she later retracted. (Dkt. No. 1, at 12.) In her opposition memorandum of law, she additionally alleges that she was subjected to "intimidation and unequal treatment." (Dkt. No. 20, at 7.)

All of these allegations are simply too vague to plausibly suggest an objectively hostile work environment. Apart from the fact that Plaintiff does not allege any specifics about what the

---

[3]     Plaintiff alleges that she sustained the relevant injury on April 27, 2024, but does not indicate when she returned to work. (Dkt. No. 1, at 12-13.)

relevant conduct consisted of (i.e., what the relevant individuals actually did when they "acted

uncomfortably" or subjected her to "hostility" and "unfair treatment," or in what way she was

isolated or excluded) apart from a reduction of her shifts, she also has not alleged anything about

the length of time this conduct occurred or how frequently.  As was noted previously, it is not

clear when Plaintiff returned to work after her medical leave or how much time elapsed between

that return and when she complained about the conduct to Defendant Taylor on September 1,

2024.  Although a Complaint need not be specific, it must provide enough factual detail

regarding the offensive conduct to plausibly suggest that she can state a claim.

For the above reasons, the Court finds that Plaintiff's discrimination and hostile work

environment claims must be dismissed.

## C.    Whether Plaintiff Has Stated Retaliation Claims

After careful consideration, the Court answers this question in the affirmative as to

Plaintiff's claims pursuant to Title VII and the NYSHRL for the reasons discussed below, but in

the negative as to her claim pursuant to N.Y. Lab. L. § 740 for the reasons stated in Defendants'

memoranda of law.  *See, supra*, Parts I.B.1 and 3 of this Decision and Order.  To those reasons,

the Court adds the following analysis.

### 1.    Retaliation Claims Pursuant to Title VII and N.Y. Exec. L. § 296

Plaintiff's retaliation claims pursuant to both Title VII and the NYSHRL are subject to

the same three-part burden-shifting standard.  *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d

Cir. 2013).  However, in order to survive a motion to dismiss, a plaintiff need only state a prima

facie case.  *See Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (noting that, "[a]t

the pleading stage, 'the allegations in the complaint need only give plausible support to the

17

reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation'") (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 [2d Cir. 2015]). "To make out a prima facie case of retaliation, a plaintiff must make four showings: that '(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Summa*, 708 F.3d at 125 (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 [2d Cir. 2006]); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (formulating the relevant standard at the motion to dismiss stage as requiring a plaintiff to "plausibly allege that: (1) defendants discriminated— or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice"). Related to a prima facie case, causation between the protected activity and the adverse action "may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625 (citing *Vega*, 801 F.3d at 90-91).

To the extent that Plaintiff appears to suggest that she was retaliated against for requesting medical leave and filing for worker's compensation benefits related to her injury in April of 2024, it is not clear how much time elapsed between that conduct and any alleged retaliatory conduct (which, according to the Complaint, appears to be in the form of an allegedly hostile work environment), and the only date Plaintiff provides relative to that conduct is that she complained about this harassment to Defendant Taylor on September 1, 2024. (Dkt. No. 1, at 12.) Under the circumstances, it is impossible to tell whether there was a sufficiently close temporal connection to plausibly suggest retaliation related to her injury activities.

18

Plaintiff also alleges engaging in activity that is potentially protected in that she alleges that she (a) reported harassment to Defendant Taylor on September 1, 2024, and (b) filed a formal grievance concerning "wage theft, retaliation, and hostile work environment" on October 29, 2024. (Dkt. No. 1, at 12.) Related to the first of these allegations, Plaintiff alleges that she was demoted to a lower rate of pay without explanation effective October 21, 2024, but, between the time of her report of harassment and that action, she submitted a letter providing her "two-week notice of resignation," which Defendants permitted her to retract on September 2, 2024. (Dkt. No. 1, at 12.) Plaintiff's attempt to resign and Defendants' allowing her to retract that resignation and continue working is an intervening event that breaks any inference of causation between her complaints and the later "demotion." *See Anderson v. City of New York*, 712 F. Supp. 3d 412, 428 (S.D.N.Y. 2024) (noting that "'in this Circuit, an inference of causation is defeated … if there was an intervening causal event that occurred between the protected activity and the alleged retaliatory discharge'") (quoting *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 [S.D.N.Y. 2005]); *see also Rumsey v. Northeast Health, Inc.*, 89 F. Supp. 3d 316, 336 (N.D.N.Y. 2015) (Sannes, J.) (noting that "an intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference").

As to her formal grievance on October 29, 2024,[4] Plaintiff alleges both that (a) at an uncertain time during the grievance process, Defendants improperly disclosed confidential information related to that grievance to her coworkers, and (b) they terminated her employment effective November 23, 2024. (Dkt. No. 1, at 12.) Given that the termination occurred less than

---

[4]        Defendants do not argue that they were unaware of this grievance.

19

one month after her grievance without any apparent intervening events, the temporal proximity here is sufficient to sustain the causation element of Plaintiff's prima facie case for retaliation. *See Knox v. CRC Mgmt Co., LLC*, 134 F.4th 39, 50 (2d Cir. 2025) (finding that "a rational jury could infer a causal connection from the roughly one-month period between Knox's protected activity and her firing"); *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 130 (N.D.N.Y. 2019) (Sharpe, J.) (finding causal connection could be inferred from plaintiff's removal from campus less than one month after complaints and his termination two months after filing an EEOC charge); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 230 (E.D.N.Y. 2014) (finding that adverse actions occurring within one month of protected activity "are sufficiently close in time to establish a *prima facie* causal connection"); *accord Miller v. Great Lakes Med. Imaging, LLC*, 527 F. Supp. 3d 492, 498 (W.D.N.Y. 2021).  In a half-hearted attempt to escape that conclusion, Defendants argue only that "merely stating that Plaintiff engaged in a protected activity and was laid off one month later is not enough to establish a but-for connection between these events."  (Dkt. No. 16, Attach. 1, at 25.)  While Defendants argument is correct related to later stages in a litigation (such as on a summary judgment motion or at trial, where Plaintiff will be required to prove more than just a prima facie case), the law of this Circuit is clear that the standard of causation is much less burdensome on a motion to dismiss, requiring only that there be a sufficiently close temporal proximity such that a plausible inference of a retaliatory motive can be drawn from the circumstances.  The cases upon which Defendants rely are clearly factually distinguishable in that they involve much longer periods of time elapsing between the protected activity and adverse action; and one of them actually supports a finding that the temporal proximity in this case (which, again, was less than one month) is legally sufficient to

20

support an inference of causation at the motion to dismiss stage.  *See Dechberry v. New York City Fire Dept.*, 124 F. Supp. 3d 131, 155 (E.D.N.Y. 2015) (noting that "district courts within the Second Circuit 'have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation").

Under these circumstances, the Court finds that Plaintiff has stated a plausible claim for retaliation pursuant to Title VII and the NYSHRL[5] based on her filing of a grievance and the subsequent termination of her employment.  Defendants' motion to dismiss as to these claims is therefore denied.

### 2.    Retaliation Claim Pursuant to N.Y. Labor. L. § 740

As an initial matter, Defendants' argument that a plaintiff alleging a Section 740 claim must allege that their complaints pertained to an activity, policy, or practice that violated the law and presented a substantial and specific danger to the public health or safety is inconsistent with the prevailing law.  Specifically, although the statute did previously include such a requirement,

---

[5]    Defendants' argument that the NYSHRL claim must be dismissed because Plaintiff has not pleaded any liability beyond a theory of respondeat superior fails for two reasons: (1) Plaintiff alleges that Defendant Baywood was responsible for, among other things, "personnel decisions" which would include demotions and termination of her employment as relevant to her retaliation claim and it has not been disputed that Defendant Baywood had knowledge of Plaintiff's complaints, particularly her grievance, through the knowledge of high-ranking employees like Defendant Taylor and Defendant Tarshus; and (2) the NYSHRL permits liability against individuals based on an "aider or abettor" theory where that person participated in the relevant discriminatory conduct.  *Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010) (Sharpe, J.).  Plaintiff has alleged that Defendant Taylor was the General Manager of the Canopy By Hilton–Ithaca, her direct supervisor, and that she participated in or directed many of the alleged actions, and that Defendant Tarshus was the Regional Supervisor for Baywood Hotels, was involved in the grievance and layoff process, and participated in the alleged actions.  (Dkt. No. 1, at 11.)

the relevant statute was amended in 2021 (which became effective in January 2022) and no longer requires that any such public danger be alleged or shown to substantiate a violation of that statute. *See* N.Y. Lab. L. § 740(2) (describing prohibited activity as retaliation where an employee "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation *or* that the employee reasonably believes poses a substantial and specific danger to the public health or safety") (emphasis added); *see Callahan v. HSBC Secs. (USA) Inc.*, 723 F. Supp. 3d 315, 325 (S.D.N.Y. 2024) (noting that, as a result of the 2021 amendment, "Section 740 no longer has such a requirement" related to pleading that the relevant complaint "reported 'a substantial and specific danger to the public health or safety'"). The one case that Defendants cite in support of their argument notably predates this amendment.

Defendants also argue that this claim is deficient because there are no allegations to plausibly suggest that, with regard to the adverse actions alleged, any decision-makers were aware of her complaints. (Dkt. No. 16, Attach. 1, at 25-26.) To state a claim pursuant to the relevant statute, a plaintiff must allege that (a) "she disclosed or threatened to disclose to a supervisor an activity, policy, or practice of the employer that the employee at least reasonably believed was illegal," and (b) "must then point to a retaliatory, adverse action taken by the employer in response to that complaint." *Thacker v. HSBC Bank USA, N.A.*, 22-CV-7120, 2023 WL 3061336, at *6 (S.D.N.Y. Apr. 24, 2023) (citing N.Y. Lab. L. § 740(2)). Here, Plaintiff alleges that she reported, among other things, wage theft (a practice that she could have reasonably believed was illegal), and that approximately a month later her employment was terminated (which, as discussed above, is a period that is short enough to raise an inference of

22

causation).  Therefore, the only remaining question is whether Plaintiff made her reports to a "supervisor."

Notably, a supervisor for the purposes of the statute is defined as "any individual within an employer's organization who has the authority to direct and control the work performance of the affected employee; or who has managerial authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains."  N.Y. Lab. L. 740(1)(f).  Plaintiff does not allege who precisely she filed her "formal grievance" with regarding the alleged violations, though she does note as part of her allegations that there was an "internal grievance investigation," which suggests that the grievance was filed with someone within Defendant Baywood's organization.  (Dkt. No. 1, at 14.)  However, because it is not clear whether that unidentified individual would qualify as a supervisor under the applicable definition, Plaintiff has not alleged facts to plausibly state her claim pursuant to N.Y. Lab. L. § 740.

That being said, in her Complaint, Plaintiff appears to assert this claim not related to her grievance and termination, but rather related to her report of her workplace injury and the subsequent hostile treatment she encountered when she returned to work after her medical leave. (Dkt. No. 1, at 15.)  However, such claim would fail for the reasons discussed earlier with regard to her Title VII and NYSHRL retaliation claims: she has not provided sufficient context to ascertain whether there is any sort of causal connection between her complaint and the treatment she was subjected to (or even to ascertain that the treatment constituted an adverse action, which is difficult to determine based on the vagueness of Plaintiff's allegations related to that conduct).

For the above reasons, the Court grants Defendants' motion to dismiss as to this claim.

### D.       Whether Plaintiff Has Stated Wage Theft Claims

After careful consideration, the Court answers this question in the affirmative as to Plaintiff's claims pursuant to her claim for underpayment of "straight time" wages pursuant to the New York Labor Law for the reasons discussed below, but in the negative as to her claims for underpayment of overtime or misclassification pursuant to the FLSA and for any notification claims pursuant to N.Y. Lab. L. § 195 for the reasons stated in Defendants' memoranda of law. *See, supra*, Parts I.B.1 and 3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

Plaintiff asserts wage theft claims based on Defendants' failure to pay her at her hourly rate (i.e., underpayment), failure to pay her for overtime hours worked, and misclassification of her job title on official payroll documents, all of which purportedly arise under the FLSA.  (Dkt. No. 1, at 14-15.)  The Court notes as an initial matter that the FLSA does not provide a cause of action for unpaid regular wages (i.e., a "gap time" claim) where the average rate of pay still exceeds the minimum wage.  *See Coley v. Vannguard Urban Improvement Assoc., Inc.*, 12-CV-5565, 2018 WL 1513628, at * 9-10 (E.D.N.Y. Mar. 27, 2018) (citing *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 [2d Cir. 2013]; *Nakahata, v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 [2d Cir. 2013]).  Plaintiff notably has not alleged that the reduced wage she was paid fell below the minimum wage and has therefore not pleaded any such claim under the FLSA.  A gap time claim can, however, be brought pursuant to N.Y. Lab. L. § 191 and/or N.Y. Lab. L. § 663(1), so, because the Plaintiff is proceeding *pro se* in this action, the Court will liberally construe her claim as arising under the New York Labor Law.

24

As to her assertion that she was not paid for overtime hours worked, the Court agrees with Defendants that her sparse and conclusory allegations as to that issue do not meet the pleading standard outlined by the Second Circuit for such a claim. *See generally Lundy*, 711 F.3d at 113-15; *Nakahata*, 723 F.3d at 200-02; *Dejesus v. HF Mgmt Servs., LLC*, 726 F.3d 85, 88-90 (2d Cir. 2013). Specifically, Plaintiff has not "sufficiently allege[d] 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," and does not provide any estimate of her hours worked "in any or all weeks" or that any alleged uncompensated time occurred during a week when she worked more than 40 hours. *Dejesus*, 726 F.3d at 88. Plaintiff's FLSA claim must therefore be dismissed to the extent it asserts a failure to compensate for overtime hours worked.

As to her assertion that Defendants misclassified her job title on certain pay documents, Plaintiff has not stated any cognizable claim. Plaintiff notably does not allege that she was misclassified as an independent contractor as opposed to an employee, or that she was classified as an exempt employee as opposed to a non-exempt employee; and it is not at all clear how merely listing her as a different position in certain documents resulted in any harm. Plaintiff alleges that this misclassification affected overtime eligibility but does not provide any factual allegations elaborating on what those effects were. To the extent that she alleges that this misclassification "affected her . . . pay rate," such issues are more appropriately part of her state law claim regarding unpaid wages that will be discussed below (to the extent this misclassification was the cause of her being paid the allegedly lower rate than she was promised).

As to Plaintiff's assertions that she was sometimes paid at an hourly rate less than what she was promised, the Second Circuit has indicated that such a claim may be construed as arising under N.Y. Lab. L. § 663(1), which states in relevant part that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments" as well as reasonable attorney's fees, prejudgment interest, and potentially liquidated damages.  N.Y. Lab. L. § 663(1); *Lundy*, 711 F.3d at 118; *Nakahata*, 723 F.3d at 202.  The Second Circuit has indeed recognized that "an allegation of hours worked without compensation may give rise to a gap-time claim" pursuant to that statute, despite the fact it addresses minimum wage specifically. *Nakahata*, 723 F.3d at 202.

Some courts within this Circuit (particularly the Eastern District of New York) have also recognized that "[w]here a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, . . . the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL § 198," concluding that, although that statute specifically addresses the timing of payment of wages, it nevertheless creates an entitlement to all wages that are due to an employee for work performed. *Ferreira v. Brooklyn's Constructions & Designs Inc.*, 22-CV-3796, 2024 WL 5386542, at *10-11 (E.D.N.Y. Mar. 15, 2024) (citing *Cavalotti v. Daddyo's BBQ, Inc.*, 15-CV-6469, 2018 WL 5456654, at *13 [E.D.N.Y. Sept. 8, 2018]; *Sanchez v. Hyper Structure Corp.*, 19-CV-4524, 2023 WL 281571, at *8 [E.D.N.Y. Feb. 24, 2023]).  Notably, at least one of these cases specifically found that an employer's payment of less than the agreed-upon hourly rate was a violation of Section 191. *See Cavalotti*, 2018 WL 5456654, at *14 (finding the plaintiff had sufficiently alleged a violation of

26

N.Y. Lab. L. § 191 for failure to pay earned wages in accordance with the terms of her employment where she alleged that she had an oral agreement with the defendant that she would be paid $11 per hour, but that defendant failed to pay her at that rate for the straight-time hours that she worked).[6]  The Court finds that N.Y. Lab. L. § 191 provides the more likely avenue of redress in this case, given that, while N.Y. Lab. L. § 663 appears to apply to wages that are "less than the wage to which [a plaintiff] is entitled *under the provisions of this article*," i.e., related to the minimum wage, N.Y. Lab L. § 663(a) (emphasis added), N.Y. Lab. L. § 191 has been interpreted to apply where the employer and employee have agreed upon a wage outside the minimum wage or statutory framework.[7]

---

[6]      In *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010), the Second Circuit stated generally (albeit in a different context than the one presented here) that "Labor Law § 191 by its terms only involves the timeliness of the wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a particular wage." *Myers*, 624 F.2d at 545 (citing *Jara v. Strong Steel Door, Inc.*, 2008 WL 3823769, at *12 (N.Y. Sup. Ct., Kings Cnty. 2008).  However, *Myers* does not conflict with the above-discussed cases for two reasons.  First, that case involved overtime payments, which are covered by the FLSA, and the Second Circuit specifically noted that "New York courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute," such as the FLSA, but "rather § 191 guarantees only that the wages the employer and employee have 'agreed' upon be paid in a 'timely' manner again according to the terms of [the employee's] employment." *Myers*, 624 F.2d at 545 n.1.  Second, the case relied upon in *Myers* not only involved a situation in which the relevant wages claimed were covered under a different provision of the New York Labor Law (§ 220), but also involved the failure to pay the "prevailing" wage, not a wage agreed upon between the employer and employee. *Jara*, 2008 WL 3823769, at *12; *see* N.Y. Lab. L. § 220(3)(a) ("The wages to be paid for a legal day's work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages hereinafter defined.").  The Court therefore agrees with the Eastern District of New York in *Cavalotti* that *Myers* does not preclude the use of N.Y. Lab. L. § 191 related to the underpayment of agreed-upon "straight-time" wages. *Cavalotti*, 2018 WL 5456654, at *13 n.12.

[7]      The Court notes that, although whether Plaintiff is classified as a "manual worker" or a "clerical or other worker" (which represents the catch-all provision for all workers not encompassed by the other enumerated categories in the statute) may perhaps change whether

27

Here, Plaintiff has alleged that she "was promised a wage of $20/hour with $30/hour overtime by General Manager Kathy Taylor," but that "[d]espite that promise, Plaintiff was paid inconsistently, often receiving $18/hour or $19/hour."  (Dkt. No. 1, at 11-12.)  For the purposes of her non-overtime or "straight-time" hours, her allegation that she was paid less than the rate promised for working those hours is sufficient to allege a plausible claim that she was underpaid for work she performed.  Although Plaintiff has not specified how many hours per week and/or pay period she was paid at the wrong hourly rate, her allegations still provide more than sufficient notice of the content of the claim against Defendants, especially in this case where evidence of Plaintiff's rate of pay for all the time she was employed with Defendants will presumably show the precise extent of the underpayment and that evidence should reasonably already be within Defendants' possession for them to review.  *See Gregory v. Stewart's Shops Corp.*, 14-CV-0033, 2015 WL 893058, at *4 (N.D.N.Y. Mar. 2, 2015) (McAvoy, J.) (finding allegations of gap-time to be sufficient related to allegation about performing a specific amount of off-the-books work on a regular basis tied to specific, identifiable events, particularly as "Defendant is able to defend against such claims as it is able to review its records and determine the dates that each Plaintiff closed a store or was involved in a shift change").

In their motion, Defendants notably do not make any arguments as to why Plaintiff does not have a valid claim pursuant to N.Y. Lab. L. § 191 and/or § 663(1), but instead argue only that Plaintiff has not alleged any violation of the WPTA related to a failure to provide certain written

---

N.Y. Lab L. § 191 could provide a method of recovery given that the language upon which the courts' interpretation that such a basis for recovery exists is present specifically in that catch-all provision, Plaintiff's allegation that she is a "Housekeeping Supervisor" is sufficient to plausibly suggest at least for the purposes of this motion that she falls within the catch-all provision.

28

wage notices. (Dkt. No. 16, Attach. 1, at 28-31.) To that end, pursuant to N.Y. Lab. L. § 195(2), an employer is required to "'notify his or her employees in writing of any changes to [the rate of pay] at least seven calendar days prior to the time of such changes.'" *Coley*, 2018 WL 1513628, at *9. However, this advance notice is not required if "such changes are reflected on the wage statement furnished in accordance with subdivision three of this section." N.Y. Lab. L. § 195(2). As Defendants argue, Plaintiff does not appear to allege that she was not furnished with the wage statements required under this section, or that such statements did not reflect alleged changes to her pay rate (such as when she was "demoted" in October 2024). As a result, Plaintiff has not stated a claim for any violation of N.Y. Lab. L. § 195.

For the above reasons, the Court finds that Plaintiff's underpayment claim based on her "straight time" wages has been sufficiently pleaded pursuant to the N.Y. Labor Law, although any claim pursuant to the FLSA for underpayment of overtime wages or misclassification, or pursuant to N.Y. Lab. L. § 195, must be dismissed.

**E.      Whether Plaintiff's Title VII and Section 740 Claims Must Be Dismissed As a Matter of Law Against the Individual Defendants**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra*, Parts I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

The Court agrees with Defendants that Plaintiff's claims pursuant to Title VII against Defendant Taylor and Defendant Tarshus must be dismissed because that statute does not provide for liability against individuals. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (noting that 'individuals are not subject to liability under Title VII'") (quoting

29

*Wrighten v. Glowski*, 232 F.3d 119, 120 [2d Cir. 2000]; citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 [2d Cir. 1995]).

Moreover, Section 740 states that "[a]n employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee" engages in the enumerated conduct. N.Y. Lab. L. § 740(2). The statute defines an "employer" as "any person, firm, partnership, institution, corporation, or association that employs one or more employees." N.Y. Lab. L. § 740(1)(b). In her Complaint, Plaintiff specifically alleges that Defendant Baywood was her "employer at all relevant times," while she alleges that Defendant Taylor was a "General Manager" and her "direct supervisor," and Defendant Tarshus was a "Regional Supervisor" who was "involved in the grievance and layoff process." (Dkt. No. 1, at 10-11.) Under the circumstances, Plaintiff's allegations plausibly suggest that only Defendant Baywood was her employer for the purposes of Section 740, and consequently, any Section 740 claim asserted against Defendant Taylor and Defendant Tarshus (who were merely supervisory or management employees of Defendant Baywood) must be dismissed as well.

F.      **Whether Plaintiff's Remaining State Law Claims Must Be Dismissed**

The Court answers the above question in the affirmative for the reasons that will be discussed below.

As to Plaintiff's assertions of breach of privacy and/or confidentiality related to the details of her internal grievance, there does not appear to be any legal basis for this as a separate legally cognizable claim. Other than alleging that her grievance was "meant to be confidential," Plaintiff has not alleged any facts regarding a right to privacy or confidentiality, and this bare

30

allegation does not plausibly suggest the existence of a legally enforceable obligation regarding privacy or confidentiality, such as a contractual promise. She further does not provide any allegations related to the content of her grievance other than to state that it was "concerning wage theft, retaliation, and hostile work environment." New York notably does not recognize any freestanding common law or statutory tort for breach of confidentiality, and the tort invasion of privacy is limited to protection against appropriation of name or likeness related to use for advertising or trade without the individual's consent. *Farrow v. Allstate Ins. Co.*, 53 A.D.3d 563, 563-64 (N.Y. App. Div. 2d Dept. 2008) (citing *Ram v. Moritt*, 205 A.D. 2d 516, 517 [N.Y. App. Div. 2d Dept. 1994]; *Cohen v. Herbal Concepts*, 63 N.Y.2d 379 [N.Y. 1984]); *see also Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 379 n.8 (S.D.N.Y. 2024) (noting that "New York law does not recognize a legal claim for invasion of privacy"). As a result, Plaintiff has not asserted any legally cognizable separate claim related to the alleged disclosure of information contained in her grievance.

As to Plaintiff's assertion of a wrongful termination claim, "New York does not recognize the tort of wrongful discharge for at-will employees." *Safranek v. Wegmans Food Markets, Inc.*, 25-CV-5696, 2026 WL 554774, at *2 (S.D.N.Y. Feb. 27, 2026) (citing *Rayskin v. City of New York*, 16-CV-2311, 2018WL 8201893, at *3 [S.D.N.Y. June 26, 2018]). Without a separate basis for such a claim, Plaintiff's assertions of wrongful termination are cognizable only to the extent permitted through, for example, her Title VII or NYSHRL claims, which have already been addressed above. She notably has not provided any reason to believe that there is a contractual basis for any wrongful termination claim. As a result, Plaintiff has also not stated any separate legally cognizable claim for wrongful termination.

31

For the above reasons, to the extent Plaintiff has attempted to assert these additional state law claims, they must be dismissed.

**G.      Whether Plaintiff Should Be Permitted an Opportunity to Amend Her Complaint**

After careful consideration, the Court answers the above question in the affirmative. "'Generally leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Samodovitz v. Troutman*, 797 F. Supp. 3d 1, 8-9 (N.D.N.Y. 2025) (Hurd, J.) (quoting *Matima v. Celli*, 228 F.3d 68, 81 [2d Cir. 2000]).  Here, because the identified defects in the pleading of some of Plaintiff's claims relate to a mere failure to allege certain factual details as opposed to any fundamental incurable ability to state a claim, the Court will permit Plaintiff to file a motion to amend the Complaint specifically as to the following claims: (1) the discrimination and hostile work environment claims pursuant to Title VII against Defendant Baywood and those pursuant to the NYSHRL against all Defendants; (2) the claims pursuant to the FLSA related to overtime and misclassification; (3) the wage statement notification claim pursuant to N.Y. Lab. L. § 195; and (4) the retaliation claim pursuant to N.Y. Lab. L. § 740.  As to her other claims that the Court has dismissed, however, the Court finds that the defects related to those claims are substantive in nature and therefore any opportunity to amend those claims would be futile and need not be allowed.  *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118 (N.D.N.Y. 2023) (Sannes, C.J.) (noting that "a court can deny a request to amend as futile where the problem with the claim is 'substantive' and 'better pleading would not cure it'") (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 [2d Cir. 2000]).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 16) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice**:

(1) Plaintiff's claims pursuant to 42 U.S.C. § 1983;

(2) Plaintiff's claims pursuant to Title VII and N.Y. Lab. L. § 740 against Defendant Taylor and Defendant Tarshus; and

(3) Plaintiff's state law claims for wrongful termination and breach of privacy and/or confidentiality; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** to amendment in this action upon a successful motion to amend under N.D.N.Y. L.R. 15.1 filed within **THIRTY (30) DAYS** of the entry of this Decision and Order, and **with prejudice** upon the failure to file such a successful motion to amend:

(1) Plaintiff's discrimination and hostile work environment claims pursuant to Title VII against Defendant Baywood and the NYSHRL against all Defendants;

(2) Plaintiff's claims pursuant to the FLSA related to overtime and misclassification;

(3) Plaintiff's wage statement notification claim pursuant to N.Y. Lab. L. § 195; and

(4) Plaintiff's retaliation claims pursuant to N.Y. Lab. L. § 740; and it is further

**ORDERED** that the following claims **SURVIVE** Defendants' motion:

(1) Plaintiff's retaliation claims against Defendant Baywood pursuant to Title VII and against all Defendants pursuant to the NYSHRL; and

(2) Plaintiff's underpayment of "straight-time" wages claim pursuant to the New York Labor Law.

Dated: May 1, 2026
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

34